David H. Madden
Mersenne Law
9600 S.W. Oak Street
Suite 500
Tigard, Oregon  97223
(503)679-1671
ecf@mersenne.com

United States District Court

Northern District of California

San Francisco Division

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Civil Action No.: ................... 3:18-cv-1219-LB |
| *Plaintiff* | |
| v. | **ANSWER TO FIRST AMENDED COMPLAINT [dkt. 11-2];** |
| HUSBAND, | **CROSS COMPLAINT FOR DECLARATORY JUDGMENT** |
| *Defendant* | JURY TRIAL DEMANDED |
| WIFE, | |
| *Declaratory-Judgment Plaintiff* | |
| v. | |
| STRIKE 3 HOLDINGS, LLC *and* | |
| ROE 1–5, | |
| *Cross Defendants* | |

For their Answer and defense of the allegations of copyright infringement levied by Plaintiff and Cross-Defendant STRIKE 3 HOLDINGS, LLC ("STRIKE 3"), Defendant HUSBAND and Declaratory-Judgment Plaintiff WIFE (together "Respondents") admit, deny and allege as follows.

To the extent that any allegation against them or either of them is not completely and explicitly addressed, such unaddressed portion of the allegation is denied.

## Answer

1. Defendant admits that this case alleges infringement of copyrights claimed by STRIKE 3.

2. Defendant lacks information to admit or deny STRIKE 3's ownership of any adult motion pictures, and consequently denies that it possesses any rights therein.

3. Defendant lacks information to admit or deny STRIKE 3's alleged business activities and its commercial results. Defendant denies that these allegations are material to STRIKE 3's allegations against Defendant.

4. Defendant denies "stealing" STRIKE 3's works, and denies copying, distributing or making any other improper use thereof, by means of the BitTorrent protocol or otherwise. Defendant did not infringe STRIKE 3's rights (if any) in any of the 29 movies which are understood to be represented by the entries in Plaintiff's Exhibit A, *dkt* 1-1.

5. Defendant denies committing any infringing activities, and denies any attempt to hide such activities behind any purported "anonymity" of a computer Internet Protocol ("IP") address. Defendant specifically denies that Internet Service Provider ("ISP") Comcast Cable Communications LLC identified Defendant to Plaintiff at any time.

6. Defendant acknowledges that the present action alleges infringement of rights under 17 U.S.C. §§ 101 *et seq.*, which rights are purportedly held by Plaintiff.

7. Defendant admits that this Court has subject-matter jurisdiction over the present claims.

8. Defendant admits that this Court has personal jurisdiction over Defendant.

9. Defendant admits that venue is proper in this District.

10. Defendant lacks information to admit or deny STRIKE 3's form of entity and location, and consequently denies the same.

11. Defendant admits that Defendant resides at the stated address.

12. Defendant lacks information to admit or deny these details of STRIKE 3's business

activities.  Defendant denies that STRIKE 3's business is material to the allegations of the present complaint.

13.     Defendant lacks information to admit or deny these allegations about Plaintiff's motion pictures and websites.  The allegations are without apparent connection to the 29 movies alleged to have been infringed, and are consequently irrelevant to the present complaint.  Defendant has never heard of Mr. Lansky and was unaware that he has allegedly been dubbed "the adult film industry's 'answer to Steven Spielberg.'"  Even assuming, *arguendo*, that this is true, Defendant denies that Mr. Lansky's professional acclaim is relevant to STRIKE 3's allegations.

14.     Defendant lacks information to admit or deny these allegations about STRIKE 3's alleged impact on the adult entertainment business.  The allegations are denied as immaterial.

15.     Defendant lacks information to admit or deny whether "Internet piracy" is a major problem for STRIKE 3.  Defendant denies committing or participating in any activities that could be deemed "Internet piracy," and specifically denies "pirating" any of STRIKE 3's movies.

[UNNUMBERED ALLEGATION].  Defendant denies using the BitTorrent File Distribution Network or any other instrumentality to infringe Plaintiff's purported copyrights.

16.     Defendant admits that BitTorrent is a computer protocol that permits computers implementing the protocol to connect to other such computers and to exchange data with those computers efficiently.  STRIKE 3's allegations are denied to the extent that they are inconsistent with the foregoing admission, on the ground that STRIKE 3's characterization is technically inaccurate and/or misleading.

17.     Defendant denies the allegations of paragraph 17 as incomplete, technically inaccurate and/or misleading.  Paragraph 17 alleges no facts about Defendant's acts or omissions.

18.     Defendant denies the allegations of paragraph 18 as incomplete, technically inaccurate, misleading, and argumentative.  Paragraph 18 alleges no facts about Defendant's acts or omissions.

19.     Defendant denies the allegations of paragraph 19 as incomplete, technically inaccurate and/or misleading.  Paragraph 19 alleges no facts about Defendant's acts or omissions.

20.     Defendant denies the allegations of paragraph 20 as incomplete, technically inaccurate and/or misleading. Paragraph 20 alleges no facts about Defendant's acts or omissions.

21.     Defendant denies the allegations of paragraph 21 as incomplete, technically inaccurate and/or misleading. Paragraph 21 alleges no facts about Defendant's acts or omissions.

22.     Defendant denies that Defendant used a BitTorrent file network or any other computer facility to download or distribute STRIKE 3's motion pictures.

23.     Defendant lacks information to admit or deny actions allegedly performed by IPP International U.G. ("IPP"), an entity which is not currently a party to the present action.

24.     Defendant denies that IPP downloaded any pieces of a digital media file containing STRIKE 3's motion pictures from any computer owned or operated by Defendant. Defendant further denies that Defendant was at any time infringing STRIKE 3's rights in any of its movies.

25.     Defendant lacks information to admit or deny whether an unidentified individual or entity downloaded a full copy of any media file from a BitTorrent file distribution network, and does not know what calculations the individual or entity might have performed. Defendant denies uploading, downloading or distributing any digital media file containing STRIKE 3's movies.

26.     Defendant denies all of downloading, copying and distributing Plaintiff's works, in whole or in part.

27.     Defendant lacks information to admit or deny the amount of Plaintiff's copyrighted content that was uploaded by IPP to BitTorrent users. Upon information and belief, the BitTorrent protocol does not permit IPP to do what STRIKE 3 alleges IPP has done, without also uploading such content. Therefore, upon information and belief, IPP **does** upload STRIKE 3's copyrighted content to BitTorrent users, although it did not upload such content to Defendant because Defendant did not participate in any BitTorrent activity involving STRIKE 3's movies.

28.     Defendant lacks information to admit or deny the "verification" by an unidentified individual or entity of "digital media files." Paragraph 28 alleges no facts about Defendant's acts or omissions.

29.   Defendant denies infringing STRIKE 3's rights at any time.  Defendant did not infringe STRIKE 3's rights in the past, is not currently infringing STRIKE 3's rights, and does not intend to infringe STRIKE 3's rights in the future.

30.   Defendant lacks information to admit or deny Plaintiff's ownership of the copyrights at issue.  Consequently, Defendant denies that Plaintiff owns any such copyrights, that any of its works are properly registered, and that any of its works comprise material which is protectible by copyright.

31.   Defendant lacks information to admit or deny Plaintiff's provisional rights in any unregistered works, and consequently denies that Plaintiff may enforce or benefit from any such rights.

32.   Defendant denies that Plaintiff is entitled to statutory damages and attorney fees from Defendant for any act or omission connected with the 29 works listed in Exhibit A.

[U<small>NNUMBERED</small> A<small>LLEGATION</small>].  Defendant denies that Defendant infringed Plaintiff's copyrights, and further denies that Plaintiff currently possesses any evidence of such infringement.  As Respondents allege below, Plaintiff is pursuing the present action without basis, hoping that the *threat* of discovery into Defendant's private sexual activities and interests will intimidate Defendant into accepting a settlement to preserve Defendant's privacy and avoid professional embarrassment.

33.   Defendant lacks information to admit or deny identification of Defendant's spouse by ISP Comcast.  Defendant admits that Defendant's spouse is the named Internet subscriber at their residence.  Defendant lacks information to admit or deny whether unspecified "additional downloads" correspond to Defendant's interests, jobs or hobbies.

34.   Defendant lacks information to admit or deny whether currently-unnamed entity IPP "observed and recorded" BitTorrent activity associated with an IP address provided by Comcast to Defendant's spouse.  Defendant denies conducting, permitting or knowing of any BitTorrent activity involving the Internet connection associated with Defendant's spouse's account.

35. Defendant lacks information to admit or deny whether Plaintiff conducted any investigation after obtaining Defendant's spouse's name from Comcast. Upon information and belief, as explained in the following paragraph, any investigation performed by Plaintiff was inaccurate or incompetent.

36. Defendant denies that Defendant is a graphics designer, and denies that Defendant operates a website for a comic enthusiast's club. To the extent that "investigation" performed by Plaintiff suggested these "facts," Plaintiff's investigation is **wrong**.

37. Defendant observes that **paragraph 37 implicitly admits Plaintiff does not presently have sufficient evidence to suggest that Defendant was the party who used the IP address to infringe Plaintiff's copyrights using the BitTorrent network**. Defendant denies using BitTorrent or any other instrumentality to infringe Plaintiff's copyrights. Plaintiff does not have evidence of such infringement, and therefore has no basis for pursuing the present action.

38. The admissions, denials and responses of paragraphs 1–37 are relied upon in the subsequent responses.

39. Defendant denies that Plaintiff is the owner of the Works, which are understood to be the 29 items listed in Exhibit A. Defendant denies that these Works comprise material that is eligible for copyright protection in the United States.

40. Defendant denies copying or distributing any portion of the Works using the BitTorrent protocol or any other computer instrumentality.

41. Defendant denies that Plaintiff did not authorize distribution of its Works. **Plaintiff's use of IPP to investigate <u>and distribute</u> its works** grants at least an implied license to individuals, other than Defendant, who did download and redistribute those Works. However, Defendant did not download or distribute such works, and therefore has no need of Plaintiff's authorization.

42. Defendant did not infringe any exclusive right of Plaintiff in any of the Works.

43. Defendant did not willfully infringe any exclusive right of Plaintiff, because Defendant did not infringe any exclusive right of Plaintiff at all.

## Respondents' Allegations

44. It is certain that some people – knowingly or unknowingly – commit copyright infringement during their online activities. And it is certain that some rightsholders are adversely affected by such infringement. But the present case – like Plaintiff's 1,236 other cases across the United States – is not about redressing infringement.

45. Instead, Plaintiff is an associate of one or more Internet Copyright Litigation Entities whose true names are unknown, which are positioned with STRIKE 3 as co-cross-defendants in this matter and sued under the fictitious names ROE 1–5. When Respondents have obtained information sufficient to identify these individuals and entities, they will amend their answer to state such identities.

46. STRIKE 3 and Internet Copyright Litigation Entity ROEs 1–5 are commonly referred to as "copyright trolls," but the neutral sobriquet "ICLE" will be substituted for this pejorative phrase in the following allegations.

## The Internet Copyright Litigation Model

47. An enormous number of copyright-infringement lawsuits alleging infringement by means of BitTorrent distribution of works have been filed since at least as early as 2010.[1] Every one of these suits follows a clear and easily-discernable trajectory.

48. The overarching goal of an ICLE suit is to use the twin threats of the exorbitant cost of litigating in federal court (including the regular availability of attorney fees to the other side) and the possibility of ruinous statutory damages to lever an overreaching settlement from an individual who pays the bill for Internet service.

49. In any individual case, ICLE plaintiffs' activities might conceivably be excused as merely aggressive litigation tactics – over the line, perhaps, but not quite calling for sanction. But when repeated thousands of times (again, STRIKE 3 alone has filed 1,237 such cases in the past year), it

---

[1] The earliest suit known to Respondents was 1:10-cv-873 *Voltage Pictures v. Does*, filed 24 May 2010 in the U.S. District Court for the District of Columbia, initially targeting 5,000 Does, although Plaintiff issued early discovery for **over 24,000 computer IP addresses**.

is clear that the abuses are not isolated incidents or accidents.

50. Further, as detailed below, ICLE plaintiffs **conceal material information** from the courts whose aid they recruit and depend on. Thus, it is not just defendants who are harmed by plaintiffs' activities, but the courts themselves, whose judges are duped into improvidently granting discovery privileges on the basis of misleading and incomplete information.

**The BitTorrent Copyright Enforcement Players**

51. The named plaintiff in an ICLE lawsuit colludes with several additional individuals and entities. These associated entities change their names and corporate form frequently to frustrate investigation into their tactics and to complicate proper service of discovery upon them. Therefore, Respondents are unable to provide the current names of Plaintiff STRIKE 3's conspirators, and must proceed against them as anonymous ROE parties.[2]

52. The face of every ICLE lawsuit is an author or media producer, who has at least a facially-plausible claim to own one or more works protectible under 17 U.S.C. §§ 101 *et seq.*, the Copyright Act. These claims are often questionable or outright false (and known to be so by the author), but they only need to be strong enough to survive the modest scrutiny a court may give to an unopposed motion for early discovery.

53. The author's first co-venturer in an ICLE lawsuit is a coordinating agency which manages tranches of cases by author, work, jurisdiction and other criteria. The coordinating agency manages prosecuting-attorney relationships, provides template legal documents to be filed, ensures that the copyrighted work will be made available for download on the Internet in a way that can be observed by an investigator, suborns declarations to support court filings, and receives in return a share of the proceeds of the scheme.

54. The author's second co-venturer in an ICLE lawsuit is a computer investigating firm which produces lists of computer Internet Protocol ("IP") addresses to be distributed to the ICLE plaintiffs' attorneys in various jurisdictions. The investigator is usually located outside the U.S.,

---

[2] The typical name for such parties, DOE, has already been used in this action to refer to the unknown infringer.

which ensures that provenance of case-initiating evidence is virtually impossible to investigate. The investigator is paid per IP address, and may also receive a share of the proceeds of the scheme.

55. The author's third co-venturer in an ICLE lawsuit is the attorney prosecuting a set of suits in a particular jurisdiction. In the past, the attorney was often an inexperienced practitioner who might plausibly claim ignorance of the technical details of the allegations in the templates he was provided, but present ICLE attorneys are experienced, sophisticated, skilled and fully aware of the technical details of the "investigation," the nature and import of material information concealed from the court, and the legal and ethical risks of pursuing these actions. The prosecuting attorney shares the proceeds of the scheme, including legal fees, with the author and with non-attorney coordinating agency and non-attorney investigator.

**The Common Trajectory of a BitTorrent Copyright Enforcement Action**

56. The ICLE co-venturers arrange for the work(s) to be distributed over the Internet to individuals using the BitTorrent network. Although ICLE plaintiffs insinuate that their investigators merely stumble upon nests of pirates "stealing" their works, the technical details of BitTorrent computer interaction make it implausible that sufficient IP addresses can be collected "accidentally" to make this litigation scheme viable. Further, the fact that the investigator is compensated per IP address makes it overwhelmingly likely that one of the co-venturers, or another as-yet unmentioned co-venturer, is responsible for distributing the work, since this is by far the most efficient way to collect IP addresses of downloaders.

57. Having thus collected as many IP addresses as possible, the scheme continues by geo-locating the addresses to approximate locations in the United States. The addresses are provided to an attorney in the relevant jurisdiction for further action.

58. When an attorney has enough IP addresses for a particular work, he files a lightly-edited cookie-cutter complaint whose essence is: "Author's investigator has observed these computer addresses infringing Author's copyright in the work. We request early discovery to determine who has stolen this material."

59.     The court of the jurisdiction – inadequately informed by the author's *ex parte* filings – typically grants this discovery, and subpoenas are issued to Internet Service Providers for the names of their subscribers.

60.     When the ICLE co-venturers receive these names, they attempt to obtain quick monetary settlements, using the high cost of litigating a federal case, the threat of ruinous statutory damages, and in a "porn" case, the presumed embarrassment the subscriber would experience if his or her sexual proclivities were to be made public.

61.     If an Internet subscriber is insufficiently compliant in the face of these threats, the ICLE co-venturers may name the person as a defendant, but only as a means to increase pressure. The co-venturers lack both intent and ability to pursue their allegations to final judgment. If a named defendant answers denying liability, the ICLE co-venturers' motivation shifts to avoiding disclosure of the details of their relationships and activities, and evading the prevailing-party fees available **even-handedly** to defendants who overcome the allegations against them. Most ICLE lawsuits that proceed past naming a subscriber terminate inconclusively: few make it to a pre-trial merits disposition, and almost none go to trial.

### Regarding Strike 3 and its Co-Venturers

62.     The present suit is an ICLE lawsuit pursued by STRIKE 3 and its co-venturers substantially in accordance with the model described above.

63.     Upon information and belief, STRIKE 3 and/or a co-venturer ROE made the works of STRIKE 3 available for public download by anyone using a BitTorrent network.

64.     Assuming that STRIKE 3's co-venturer investigator did, in fact, capture network traffic appearing to be associated with a computer IP address affiliated with Defendant or Cross-Plaintiff, such capture was the result of a technical error, misconfiguration or failure to operate correctly on the part of the investigator's software or operators, and not a result of any act or omission of Respondents.

65.     Respondents and both of them deny downloading, uploading, distributing or making any

1 | other use of data over which STRIKE 3 has any claim under the Copyright Act.

66. In order to obtain early discovery, STRIKE 3 made the false representations that:

"[John Doe subscriber assigned IP address 73.241.236.145] is, in a word, stealing these works on a grand scale." (Complaint, dkt. #1, ¶ 4)

"**Defendant's name and address can be provided by Defendant's Internet Service Provider.**" (Complaint, dkt. #1, ¶ 12)

"[Strike 3's] goal is not to embarrass anyone or force anyone to settle unwillingly, especially anyone that is innocent." (Application for Early Discovery, dkt. #5, p. 11 of 21 [3:11-12])

67. STRIKE 3 and its co-venturers ROEs 1–5 knew that discovery from ISP Comcast could only identify the Internet subscriber, and **could not identify** any individual who allegedly infringed Plaintiff's copyright.

68. Respondents learned of the present lawsuit through correspondence with Comcast, **before** STRIKE 3 and its co-venturers obtained Cross-Plaintiff's name.

69. On 23 April 2018, Respondents' counsel provided a waiver of service, a Declaration of Non-Infringement and a Rule 68 offer of judgment[3] to STRIKE 3's counsel.

70. On 4 May 2018, **before** STRIKE 3 obtained Cross-Plaintiff's name, STRIKE 3's counsel rejected the offer of judgment, asserting that the Court could not enter judgment prior to service (and notwithstanding the waiver of service provided with the offer).

71. Also on 4 May 2018, **before** STRIKE 3 obtained Cross-Plaintiff's name, STRIKE 3's counsel stated that STRIKE 3 would accept in settlement an amount exceeding Respondent's Rule 68 offer by $500.00, notwithstanding its stated position that the Court could not enter judgment in this case.

72. **In other words, STRIKE 3 refused to accept a settlement offer from an individual**

---

[3] Allegations related to settlement offers and counteroffers are not admissible to prove or disprove the validity or amount of a disputed claim, Fed. R. Evid. 408(a), but are admissible for other purposes, such as demonstrating the falsity of STRIKE 3's claims of good-faith motivation.

1  **whose identity it did not know, who provided a sworn declaration that the individual had**
2  **not committed the infringement alleged; yet it was willing to accept $500$^{00}$ more from the**
3  **same unidentified, liability-denying individual.**

4  73.  After STRIKE 3 obtained Cross-Plaintiff's name, it purported to conduct "a preliminary
5  investigation," First Amended Complaint, dkt. 11-2, ¶ 35, which apparently convinced STRIKE 3
6  of several untrue facts (FAC ¶ 36).

7  74.  Even if these alleged facts *were* true, they provide no support for Plaintiff's allegations.

8  75.  Plaintiff's claim is that because "Defendant is [allegedly] a graphic designer that also owns
9  and/or operates a website for a comic enthusiasts club," discovery "<u>will likely</u> demonstrate that
10 Defendant […] infringed Plaintiff's copyrights."

11 76.  **Plaintiff offers no reasoning why a graphic designer would be more likely than**
12 **anyone else to infringe its copyrights**.

13 77.  **Plaintiff offers no reasoning why an operator of a comic-enthusiasts website would be**
14 **more likely than anyone else to infringe its copyrights**.

15 78.  Plaintiff admits that it has **no evidence** that Defendant infringed its copyrights – it only
16 has a vague hope that further discovery "**will likely**" demonstrate this.

17 79.  Plaintiff has no basis for pursuing Respondents or either of them.  It is embarking upon a
18 **fishing expedition** for the sole purpose of intimidating Respondents into paying a larger
19 settlement.

AFFIRMATIVE DEFENSES

21 80.  Although Respondents and each of them categorically deny any act or omission in
22 derogation of STRIKE 3's purported rights in the works, they assert the following affirmative
23 defenses as required by Fed. R. Civ. P. 8(a).

24 81.  Plaintiff STRIKE 3 does not possess the rights alleged to have been infringed, and
25 therefore lacks standing to pursue this action.

26 82.  Plaintiff STRIKE 3 and/or its co-venturers ROEs 1–5 and/or their authorized agents

1 distributed the works into a public BitTorrent network, so any download or distribution
2 committed by Respondents (or by anyone for whom Respondents are responsible, as well as any
3 other "infringer" who participated in the BitTorrent swarms) was from a source authorized to
4 permit such download and distribution.  Consequently, any exercise by Respondents of an
5 exclusive right protected by the Copyright Act was with the consent of an authorized party and
6 not in derogation of any exclusive right.

83. Some or all of the works were not properly and timely registered, and in the absence of such registration, Plaintiff is not entitled to statutory damages for any infringement.

84. Some or all of the works are not eligible for copyright protection under the laws of the United States, so Plaintiff lacks a protectible interest that could be infringed.

85. Plaintiff STRIKE 3 and its co-venturers ROEs 1–5 are committing copyright abuse through their pursuit of the litigation scheme detailed above.

86. Any fragments of any of the works transmitted to or from a computer at an IP address associated with Respondents or either of them, does not form a perceptible copy of any of the works.

87. Any fragments of any of the works transmitted to or from a computer at an IP address associated with Respondents or either of them is no more than a *de minimis* portion of the work and not a compensable infringement thereof.

88. Any fragments of any of the works transmitted to or from a computer at an IP address associated with Respondents or either of them contain only non-protectible *scènes à faire* material.

### Cross-Plaintiff's Claim

89. Cross-Plaintiff repeats and realleges each and every one of the preceding paragraphs.

90. The Court has subject matter jurisdiction over Cross-Plaintiff's request for declaratory judgment because the declaration requested presents a federal question under the Copyright Act.

91. The Court has personal jurisdiction over STRIKE 3 because STRIKE 3 has pursued its direct claim here.

92. Venue is proper in this Court because it is the Court that STRIKE 3 chose for its direct claim.

93. Cross-Defendant STRIKE 3 has alleged that Cross-Plaintiff **is** the infringer.

94. STRIKE 3 has attempted to obtain a settlement payment from an unknown individual *in this matter* who denied liability *in this matter*.

95. STRIKE 3 has pursued infringement claims against hundreds of other, similarly-situated Internet subscribers.

96. Cross-Plaintiff has a well-founded and credible fear of being subjected to further baseless litigation associated with the present matter.

97. If Cross-Plaintiff is not present, the Court cannot accord complete relief among the existing parties.

98. The present action will raise common questions of law or fact affecting Respondents, STRIKE 3 and the ROE co-venturers.

### Respondents' Prayer for Relief

For the foregoing reasons, Respondents pray that this Court grant judgment in their favor, including:

1. A determination that they and neither of them infringed Plaintiff's copyrights by any action or inaction;

2. A declaration that Cross-Plaintiff did not infringe Plaintiff's copyrights by any action or inaction;

3. An accounting of all amounts recovered by Plaintiff for infringement of a protectible right it may be able to establish, and restitution of all amounts in excess of Plaintiff's statutory damages to the individuals from whom they were wrongfully taken;

4. An accounting of all legal fees Plaintiff and its co-venturers improperly shared with a non-lawyer;

5. Respondents' costs and reasonable attorney fees for their successful defense of Plaintiff's

infringement claims under 17 U.S.C. § 505;

6. Cross-Plaintiff's costs and reasonable attorney fees for Cross-Plaintiff's successful prosecution of Cross-Plaintiff's declaratory judgment claim against Cross-Defendant and its ROE co-venturers; and

7. Such other relief as the Court deems appropriate.

Respectfully submitted,

27 July 2018
Date

David H. Madden, CA#226657
Attorney for Respondents
Mersenne Law
9600 S.W. Oak Street
Suite 500
Tigard, Oregon 97223
dhm@mersenne.com
(503)679-1671